UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| ANTHONY S. WILLIAMS, | ) |
| --- | --- |
| *Plaintiff*, | ) |
| | ) Cause No. 1:10-cv-1592-WTL-DKL |
| vs. | ) |
| | ) |
| MICHAEL J. ASTRUE, COMMISSIONER | ) |
| OF SOCIAL SECURITY, | ) |
| | ) |
| *Defendant*. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Anthony S. Williams requests judicial review of the final decision of Defendant Michael J. Astrue, Commissioner of the Social Security Administration ("Commissioner"), denying his application for Disability Insurance Benefits ("DIB") and Supplemental Insurance Benefits ("SSI") under Titles II and XVI of the Social Security Act ("the Act"). The Court rules as follows.

## I. PROCEDURAL HISTORY

Williams filed for SSI and DIB on March 12, 2008, alleging he became disabled on October 24, 2007, primarily due to pain in his back, hips and shoulders, as well as shortness of breath, chest pain, a swollen left testicle, and chest diastasis. Williams' applications were denied initially on May 14, 2008, and again upon reconsideration on July 21, 2008. Following the denial upon reconsideration, Williams requested and received a hearing in front of an Administrative Law Judge ("ALJ"). A hearing, during which Williams was represented by counsel, was held in front of ALJ Reinhardt Korte on January 13, 2010. ALJ Korte issued his decision denying

1

Williams's application on March 9, 2010. The Appeals Council denied Williams's request for review on October 27, 2010, after which Williams filed this timely appeal.

## II. APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity he is not disabled, despite his medical condition and other factors. 20 C.F.R. § 404.1520(b).[1] At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits his ability to perform basic work activities), he is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the

---

[1]The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in all respects relevant to this case. For the sake of simplicity, this Entry contains citations to DIB sections only.

claimant is able to perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g).

On review of the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by this Court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id*., and this court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). The ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must "provide some glimpse into his reasoning . . . [and] build an accurate and logical bridge from the evidence to his conclusion." *Id.*

### III. MEDICAL EVIDENCE

Williams suffers from pain in his back, hips and shoulders, as well as shortness of breath, chest pain, a swollen left testicle, and chest diastasis. Williams was born on December 4, 1960, and he was forty-six years old at the alleged disability onset date, October 24, 2007. The relevant medical evidence follows.

3

On March 6, 2007, Williams was examined by Dr. Jeroen Balledux. Dr. Balledux's examination showed an obese, soft abdomen with mid-epigastric swelling. He ordered a tomography scan "to distinguish whether he has a real hernia defect versus diastasis."

In early April 2007, Williams had a CT scan of his abdomen. The findings included multiple serial axial images of the abdomen and his liver, galbladder, pancreas, spleen, and adrenal glands all were normal. A small, fat containing umbilical hernia and diastasis of the rectus adbominis muscle were evident.

On May 8, 2007, Williams saw Dr. Gerardo Gomez. Upon examination, Dr. Gomez noted that Williams was obese and had a mid-epigastric bulge and a small umbilical hernia fasoial defect felt that he felt was "easily reducible." Dr. Gomez discussed with Williams the possibility of having laparoscopic umbilical hernia repair.

On October 9, 2007, Williams met with Dr. Mark Falimirski to discuss the surgical options for Williams' umbilical hernia. Williams consented to laparoscopic surgery and routine preoperative testing was to be scheduled.

Williams met with Dr. Clark Simons on April 8, 2008. Williams expressed concerns about his diastasis and umbilical hernia. Dr. Simons noted that Williams missed a previously scheduled appointment for the umbilical hernia repair surgery. Therefore, Dr. Simons planned to reschedule Williams for an umbilical hernia repair.

On April 23, 2008, Williams underwent a consultative examination under the direction of the Social Security Administration. During the examination, Williams reported that he could walk at most one block, resulting in dyspnea on exertion, and that he could do eight or nine steps and then he became short of breath. He also reported that he could stand for twenty minutes and

sit for thirty minutes. The examining physician, Dr. Yasir Akhtar, described in the "musculoskeletal" portion of his report the following: Williams could stand and walk without the need for assistive measures. He demonstrated a normal gait and could walk on his heels and tandem walk, but could only partially squat and was unable to walk on his toes. All of Williams' joints were with full range of motion without evidence of deformity, effusion, or inflammation with the exception of the lumbar forward flexion, which was limited to 80 degrees forward flexion. Williams complained of pain all over secondary to lower back pain, left foot pain, Achilles heel pain, right hand locking up, bilateral shoulder pain, depression, dyspnea on exertion, and abdominal pain from a hernia. Overall, Dr. Akhtar concluded that William suffered from low back pain, left hip pain, Achilles heel injury, bilateral shoulder pain with possible underlying osteoarthritis, dyspnea and exertion with possible COPD, and a reducible hernia resulting in abdominal pain.

On May 2, 2008, a Physical Residual Functional Capacity Assessment was completed by Dr. A. Lopez, who concluded that Williams was limited to lifting fifty pounds occasionally, lifting twenty five pounds frequently, and sitting, standing, and walking for a total of six hours in an eight-hour work day. Dr. Lopez also noted that Williams had limited limitations with regard to reaching in all directions and occasional limitations with balancing. On July 21, 2008, Dr. Robert Bond affirmed Dr. Lopez's assessment.

Following a preoperative evaluation in June 2008, Williams went to the emergency room due to hypertension. He was prescribed medication and told to follow up with his primary care physician.

On August 25, 2008, Williams started a stress test but it was terminated when Williams

5

experienced shortness of breath. However, an echocardiogram was completed and was normal.

On November 4, 2008, Williams saw Dr. Simons. Upon examination, Dr. Simons noted the presence of diastasis recti and umbilical hernia. Dr. Simons performed an open umbilical hernia repair on January 12, 2009.

Williams visited the emergency room about six weeks later for pain at umbilicus. The attending doctor, Dr. Aloysius Humbert, noted "no swelling, redness, erythema or drainage." Dr. Humbert also indicated that "the patient has not [been] taking BP meds as well." Williams was prescribed medication and was urged to follow up to manage any cardiac issues.

On March 9, 2009, Williams saw Dr. Jon Duke and continued to complain of pain at the surgical site. Dr. Duke did not see evidence of infection but felt Williams's pain might be due to tight scarring at the surgical sight. Williams was prescribed medicine for the pain and directed to follow up with his surgeon.

On April 20, 2009, Williams saw Dr. Julie Vannerson for chest pain. Dr. Vannerson noted that Williams had a "surgical-type pain" that she wanted to get a stress test for. Dr. Vannerson also felt that Williams needed an "adenosine myoview due to inability to walk."

A stress test conducted in June 2009 showed normal blood pressure response and normal ST segment response to stress.

Williams met with Dr. Vannerson again on July 24, 2009, complaining of back pain. Dr. Vannerson suspected nonspecific back pain because she saw "no weakness or hyperreflexia and pain appears diffuse." She planned to get x-rays and "focus on pain control."

On July 28, 2009, Dr. Vannerson completed a Physical Capacities Evaluation in which she diagnosed arthritis of the cervical and lumbar spine and opined that Williams's prognosis

was "fair." Furthermore, Dr. Vannerson opined that Williams could sit, stand, and walk less than one hour at a time during an eight hour work day and could sit, stand and walk in combination for two hours during an eight hour work day. In addition, Williams could occasionally lift or carry up to ten pounds and occasionally reach. Dr. Vannerson found limitations with regard to Williams' hands and feet in that he should not use his hands or feet to push or pull with arm controls or leg controls. Dr. Vannerson noted on this form that "all [the information was] based on subjective patient report."

Williams attended eight physical therapy sessions beginning on August 19, 2009. At that time, Williams complained of neck pain, lower back pain, and left hip pain. Over the course of the physical therapy treatments, Williams received therapeutic exercise and manual therapy. Williams' last visit was on October 27, 2009, at which time he indicated his pain level in his back as 7 out of 10. The physical therapy report also found that

> [t]he patient showed minimal progress with pain and physical therapy, however his function improved somewhat. He did not meet PT goals for decreased pain to 5/10, sleeping through the night. He did receive an abdominal binder, however he does not wear due to increased chest pain.

## IV. **THE ALJ'S DECISION**

Applying the five-step analysis, the ALJ found that Williams was not disabled from October 24, 2007, through the date of his decision on March 9, 2010. At step one of the analysis, the ALJ found that Williams had not engaged in any substantial gainful activity ("SGA") since October 24, 2007, the alleged onset date of his disability. At step two, the ALJ determined that Williams suffered from the following severe impairments: obesity; disorders of the back; and hernia. The ALJ further found that Williams' alleged shortness of breath, chest pain, bilateral shoulder and hip pain, right hand pain, hypertension, left foot impairment since childhood, and

7

left testicle swelling were either not severe, undocumented, or were symptoms and not medically determinable impairments. In addition, the ALJ found no evidence to support any psychological symptoms. At step three of the analysis, the ALJ determined that none of Williams' severe impairments met or medically equaled a listed impairment.

At step four, the ALJ concluded that Williams retained the residual functional capacity ("RFC") to perform a range of light work described as follows. He can lift or carry ten pounds frequently and he can lift or carry twenty pounds occasionally. He can push or pull ten pounds frequently and twenty pounds occasionally with his right upper extremity, but he can push or pull with his left upper extremity only occasionally. He should not reach above shoulder level bilaterally. He should not climb ladders, ropes, or scaffolds, but he can occasionally climb ramps and stairs. He can occasionally bend and stoop and he can frequently balance, but he should not crouch or crawl. He can work on slippery or uneven surfaces occasionally but not constantly. He should not work around dangerous machinery.

The ALJ concluded that, given Williams' RFC, he was not able to perform any of his past relevant work as a laborer, floor buffer operator, and insulator. However, considering his age, education, work experience, and RFC, the ALJ found that Williams was capable of making a successful adjustment to other work that exists in significant numbers in the regional economy, including representative occupations such as packer, machine tender, and assembler. Therefore, the ALJ determined at step five that Williams was not disabled.

## V. DISCUSSION

Williams advances several objections to the ALJ's decision, each of which is addressed

below.

## A. Lack of Substantial Evidence to Support the ALJ's Decision

Williams argues that substantial evidence fails to support the ALJ's determination that Williams was not disabled due to combined chronic abdominal pain, umbilical hernia, diastases of the rectus abdominis muscles, obesity, degenerative arthritis of the cervical and lumbar spine, and hypertension. According to Williams, this error stems from the fact that the ALJ ignored or rejected treatment-examination evidence that proved Williams' disability.[2]

A treating physician's opinion is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001). However, if the treating physician's opinion is inconsistent with substantial evidence in the record, the ALJ need not give deference to that opinion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). Furthermore, an ALJ need not discuss every piece of evidence in her disability decision. *See Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir. 1995). Rather, the ALJ must simply "provide some glimpse into his reasoning . . . [and] build an accurate and logical bridge from the evidence to his conclusion." *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

---

[2] In his initial brief, Williams also states that it was "obviously unfair" for the ALJ to ignore all of his evidence proving disability and the ALJ treated him unfairly and unjustly, but Williams points to no specific evidence that was ignored, instead simply making statements of law with no analysis of the applicability of the law to the facts of this case.

Later in his reply brief, Williams provides a lengthy list of medical records he accuses the Commissioner of using in support of a post-hoc rationalization of the ALJ's decision by citing them when the ALJ did not. However, the Court notes that, with one exception, the records allegedly wielded in the Commissioner's post-hoc attempt at rationalization are merely noted in the Commissioner's statement of facts and are not used in support of an argument defending the ALJ's decision. The remaining medical record and the Commissioner's treatment of it is addressed in footnote 3 below.

Williams first takes issue with the fact that the ALJ cited many Wishard hospital medical records but "ignored" or "rejected" findings in these records that Williams had abdominal pain, diastasis recti, an umbilical hernia, shortness of breath, degenerative changes in his spine and left hip, and hypertension. However, it is clear that the ALJ accepted that Williams suffered from these ailments. In fact, the ALJ not only accepted that Williams suffered from these ailments, but also he determined that Williams' obesity, disorders of the back, and hernia were severe impairments and analyzed these impairments, along with Williams' diastases recti, under the appropriate listings. The ALJ also discussed Williams' shortness of breath and its possible causes before finding that there was no apparent objective cause for the problem. Williams' shoulder and hip impairments were also mentioned, and the ALJ explicitly explained that, although there was no objective evidence supporting these ailments, he fashioned Williams' RFC to accommodate the limited range of motion Williams experienced. The ALJ also considered Williams' reported hypertension, but noted that Williams "is not always treated for the condition now," and also noted that Williams' hypertension was not reported to have caused long-term complications. In sum, the ALJ did not ignore the evidence in the record; rather, he accepted it and analyzed it. It would have been unnecessarily duplicative to restate every diagnosis confirming an ailment the ALJ had already accepted. The ALJ's decision was not in error in this respect.

According to Williams, the ALJ also overlooked significant portions of Dr. Akhtar's April 2008 medical evaluation, yet the majority of the allegedly overlooked portions of this record simply repeat the ailments that the ALJ had already accepted. There is, however, additional evidence in Dr. Akhtar's April 2008 evaluation relating to Williams' ability to walk,

10

sit, stand, and climb stairs, which indicates that Williams could walk one block but then would develop dyspnea on exertion; Williams would become short of breath after climbing eight to nine steps; and that Williams' standing was limited to twenty minutes and sitting was limited to thirty minutes. The ALJ did not recount this evidence in his decision, but rather he did address both (1) more recent evidence, and (2) Williams own report as to his abilities, which was more limited than this April 2008 report. The ALJ reviewed Williams' October 27, 2009, report as to his abilities in which he reported walking for exercise, six to seven blocks and then back home, or twelve to fourteen blocks altogether, before opining that "[t]his level of functioning is not indicative of listing-level impairment." In analyzing the evidence relating to Williams' RFC, the ALJ also describes in detail Williams' testimony at the hearing before rejecting portions of it due to discrepancies. Williams explained at the hearing that he can stand for only five to ten minutes and sit for only ten minutes; he gets short of breath climbing stairs and after walking block and a half or two; and his back hurts if he sits in a chair more than a minute, so he spends a lot of time lying down on the floor. Given that the ALJ considered substantial evidence relating to Williams' abilities, it was not error for him not to cite the specific evidence in Dr. Akhtar's April 2008 report.

The ALJ's decision should be reversed, Williams argues, because the ALJ arbitrarily rejected Dr. Vannerson's functional evaluation. The arbitrariness of this decision is evidenced, according to Williams, by the fact that the ALJ stated that the doctor's decision was not "well supported by objective medical findings," but the ALJ did not state what parts were not so supported, and the ALJ stated that Dr. Vannerson's evaluation was inconsistent with other substantial evidence in the record, but he did not specify what evidence he considered. As the

11

Commissioner points out, Williams takes the ALJ's statements out of context. Immediately preceding the ALJ's analysis of Dr. Vannerson's opinion, the ALJ details at length the evidence relevant to Williams' RFC and thereby indicates what evidence he considered. In addition, the ALJ goes on to clarify his statement that the doctor's decision was not well-supported by objective medical findings when he explains that the doctor noted on the evaluation that it was "all based on subjective patient report." Williams argues that it was error for the ALJ to reject the doctor's evaluation on that ground because, according to Williams, the words "these are all based on subjective patient report" occur nowhere in her evaluation. Williams is mistaken. On the first page of Dr. Vannerson's physical capacities evaluation form, she has written "These are all based on subjective patient report."

In his reply to the Commissioner, Williams then argues that, even though these words appear in Vannerson's evaluation, it was nonetheless error for the ALJ to dismiss the doctor's evaluation on this basis.[3] According to Williams, because the ALJ found "medical evidence of an underlying impairment," it was error for him to reject Dr. Vannerson's report merely because it is unsupported by objective evidence. Furthermore, Williams argues, it was error to reject this report in favor of the non-examining physician's hearing testimony. In support of his argument, Williams cites *Parker v. Astrue*, in which the Seventh Circuit found error when the ALJ

---

[3] The Commissioner and Williams go back and forth about (1) whether Dr. Vannerson had a significant enough treatment relationship with Williams to be able to address his functional limitations; (2) whether the contested evaluation form was supported by other medical records from the doctor, including medical records allegedly ignored by the ALJ; and (3) whether the ALJ's rejection of Dr. Vannerson's evaluation could properly be based on the contrary opinion of the medical advisor at the hearing. However, as Williams reminds the Court, post-hoc rationalization is prohibited. Given that the ALJ explicitly rejected the doctor's report on the ground that all the limitations were based on subjective complaints, the Court declines to address alternative reasons for rejecting the doctor's opinion.

"brushed aside the treating doctors' statements that the plaintiff had disabling pain on the ground that the statements 'seem[ed] based solely on the claimant's subjective complaints,' [where] 'the only thing that cast doubt on [the claimant's] complaints were reports by two nonexamining physicians that the administrative law judge did not see fit even to mention.'" 597 F.3d 920, 922 (7th Cir. 2010). Such is not the case here. In the paragraphs preceding the ALJ's rejection of the doctor's evaluation, the ALJ describes at length the numerous inconsistencies between Williams' subjective complaints, other of his subjective reports, and contemporaneous medical records. The ALJ clearly articulated the numerous reasons why Williams' subjective complaints were not worthy of controlling weight, and thus there is no error in rejecting a report that is admittedly based on subjective complaints which the ALJ found exceeded the objective medical findings. It was not error for the ALJ to reject Dr. Vannerson's evaluation.

In sum, the ALJ properly articulated his reasoning, which is substantially supported by the medical evidence of record, and the Court must therefore uphold the ALJ's decision.

### B. Credibility Determination

Williams next argues that the ALJ's credibility determination is erroneous because the ALJ failed to make accurate findings concerning two of the seven factors required to be considered when rejecting evidence regarding a claimant's subjective symptoms pursuant to SSR 96-7p.

An ALJ's assessment of the claimant's credibility is entitled to special deference and is not grounds for reversal and remand unless it is "patently wrong." *E.g.*, *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008). When assessing the credibility of an individual's statements about pain and subjective symptoms, ALJs are guided by Ruling 96-7p. This ruling provides that an ALJ

13

must consider, in addition to the objective medical evidence, (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for fifteen to twenty minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. While the ALJ need not cite findings on every factor, the ALJ must articulate the reasons for her decision in such a way as to "make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Brindisi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003) (citing SSR 96-7p).

In support of his argument, Williams cites to portions of two medical records that were not cited by the ALJ. First, according to Williams, the ALJ failed to make accurate findings regarding the location, duration, frequency and intensity of his pain or other symptoms because the ALJ did not specifically cite portions of Dr. Akhtar's April 2008 evaluation relating to Williams' low back pain, left foot pain, Achilles heel pain, right hand cramps, bilateral shoulder pain, dyspnea on exertion, and abdominal pain. Yet Williams does not show how portions of this record would have changed or supplemented the ALJ's finding when the ALJ had already noted that Williams had pain in these areas and had noted Williams' subjective reports as to the severity of this pain. It is clear from the ALJ's decision that he considered the location, duration,

14

frequency and intensity of Williams' pain.

Second, Williams argues that the ALJ failed to make accurate findings regarding factors that precipitate and aggravate Williams' symptoms because the ALJ overlooked an August 2009 Wishard hospital physical therapy evaluation that reported that Williams' pain symptoms increased with walking, climbing, sitting, lifting and sleeping, and that the symptoms decreased only with lying on his side. However, as the Commissioner points out, the ALJ specifically considered substantively the same evidence when he described Williams' hearing testimony that his back hurts if he sits in a chair more than a minute so he spends a lot of time lying down on the floor, but he cannot lie on his stomach because of diastasis and his arms get numb unless he has them on his side. Citing to this additional record would not have changed or supplemented the ALJ's findings in any way. While the ALJ later rejected the credibility regarding the severity of Williams' reports of pain, it is clear that the ALJ made findings regarding these limitations. Again, requiring the ALJ to describe each record providing substantially the same evidence regarding this factor would be unnecessarily burdensome and duplicative.

Williams also argues that the credibility determination was contrary to Rule 96-7p because it was based solely on the lack of supporting objective evidence, but that is simply not the case. The ALJ considered Williams' subjective evidence, including his reports as to his ailments at the hearing, and the ALJ also considered (albeit lightly) Williams' sister's testimony at the hearing as well. The ALJ simply found internal inconsistencies in this subjective evidence, such as Williams' conflicting reports as to the number of cigarettes he smoked on a daily basis. It was not error for the ALJ to consider the subjective evidence but reject it in the face of discrepancies.

Williams further argues that the ALJ's decision is patently erroneous because it is perfunctory boilerplate and intentionally vague. While it is true that the ALJ recites a paragraph faulted by the Seventh Circuit as perfunctory, *Martinez v. Astrue*, 630 F.3d 693, 696 (7th Cir. 2011), the ALJ's decision in *Martinez* included "no explanation of which of Martinez's statements are not entirely credible or how credible or noncredible any of them are." This is simply not the case with this ALJ's decision. In several paragraphs following this "boilerplate" language, the ALJ describes in detail the discrepancies between Williams' testimony and the medical evidence that led to the ALJ's conclusion. The discrepancies included, among others: Williams was only taking aspirin through February 2009 for pain he described as severe and debilitating; Williams reported unalleviated pain as a nine out of ten, but at the time of this report he was in no apparent distress and had no difficulty getting out of a chair or on and off an examination table; Williams achieved a fairly exertional level of activity on a treadmill echo stress test in August 2008; and Williams sat through the hearing proceedings without any noted distractions or overt pain behavior. Given the level of detail and analysis explained by the ALJ, his decision can not be fairly characterized as perfunctory or intentionally vague. For this reason, the ALJ's credibility determination is not patently erroneous and the decision must be upheld.

### C. Failure to Consider Williams' Limitations at Step Five

Finally, Williams argues that the ALJ erred when he determined that Williams was not disabled because he could perform some jobs. The source of this error, Williams argues, is omitting limitations due to his "quite severe pain and shortness of breath" from his RFC, and is thus an argument that the ALJ's RFC determination was in error. In evaluating a claim, the ALJ must give full consideration to all of a claimant's documented impairments. *Indoranto v.*

16

*Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).

Williams argues that the ALJ arbitrarily rejected the functional evaluation written by Dr. Vannerson when he crafted Williams' RFC, but the Court has already found that the ALJ's rejection of this report is supported by substantial evidence.

In addition, while the ALJ did not specifically cite certain portions of one other medical record Williams points out, it is clear from the record that the ALJ gave full consideration to Williams' "quite severe pain" and shortness of breath, as the ALJ reviewed at length Williams' own testimony regarding his chest and hip pain and his shortness of breath before rejecting these reports as noncredible. Furthermore, the ALJ considered Williams' shoulder pain and crafted the RFC accordingly to provide that Williams should not reach above shoulder level bilaterally. The Court thus reads Williams to challenge the ALJ's preceding credibility determination that informed the limitations requiring accommodation in Williams' RFC, but the Court has already addressed this argument above. The ALJ's carefully-crafted RFC is informed by his credibility determination, which is fully supported in the record, and therefore the RFC did not precipitate an erroneous evaluation of the jobs that Williams could perform. The ALJ's decision that Williams was not disabled that is in accord with this analysis must therefore be upheld.

## VI. CONCLUSION

As set forth above, the ALJ in this case satisfied his obligation to articulate the reasons for his decision, and that decision is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is **AFFIRMED**.

SO ORDERED: 03/09/2012

_William T. Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification.